IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      No. 10-CR-2138 WJ

TOMMY PENA,

    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS COUNTS 1, 2, 4, 9, 10, AND 12 OF THE INDICTMENT**

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Counts 1, 2, 4, 9, 10 and 12, filed March 31, 2011 (Doc. 63). Defendant Tommy Pena argues that the evidence introduced at trial by the government is insufficient to convict him on the relevant counts. Having considered the parties' written and oral arguments and the applicable law, the Court finds that the motion is not well taken and shall be denied.

**BACKGROUND**

**I.    Procedural Background**

The indictment, filed on July 22, 2010, charges Defendant Tommy Pena with two counts of conspiracy (Counts 1 and 9); two counts of carjacking and aiding and abetting (Counts 2 and 10); two counts of using and carrying a firearm during and in relation to a crime of violence (Counts 4 and 12); four counts of felon in possession of a firearm (Counts 6, 8, 14, and 15); and one count of possession of methamphetamine (Count 16). Defendant executed a waiver of jury trial (Doc. 53), and the Court held a pretrial hearing on the matter (Doc. 55). Defendant was

questioned during the hearing and indicated that his waiver of jury trial was knowing, voluntary, and intelligent, and the Court so found. The case proceeded to a bench trial before the Court on December 14 and 15, 2010 (Doc. 57). The Court denied Defendant's Rule 29 motion on Counts 6, 8, 14, 15, and 16 and took Counts 1, 2, 4, 9, 10 and 12 under advisement. Tr. at 377.[1] At the conclusion of trial, the Court found Defendant guilty on Counts 6, 8, 14, 15, and 16, charging possession of methamphetamine and felon in possession of firearms and ammunition. Tr. at 417-26. Defendant reserved closing argument on the other counts and argument on the remaining portion of his Rule 29 motion for written briefing. In his written brief in support of his motion to dismiss, Defendant argues that neither incident charged constitutes a carjacking under federal law.

## II.     Factual Background

The relevant facts, taken in the light most favorable to the Government, are as follows.

<u>The Lacey incident</u>. On the evening of April 6, 2010, Defendant Tommy Pena and his co-defendant, Jeremy Conde,[2] arrived at the residence of Arthur and Collette Lacey in Roswell, New Mexico. Both Pena and Conde were armed with loaded firearms[3] and wore pantyhose over their heads. They had been hired to invade the Laceys' home and rob them by Isabel Saucedo, or "Chavela," who believed that Arthur Lacey had stolen some cash from her. Chavela promised each of the defendants an ounce of meth in return for their services, which has a street value of

---

[1] Hereafter, "Tr." refers to Transcript of Bench Trial, vols. I and II (Docs. 60 & 61).

[2] Conde has pled guilty to the indictment and his case did not go to trial.

[3] Conde's firearm had bullets in the clip but not in the chamber. That Pena's gun was loaded and deadly can be inferred from the fact that he fired several shots from the same gun on April 10, four days after the home invasion, that he possessed 9 mm ammunition on April 10 and April 19, and that Conde testified that Pena "wouldn't carry a fake gun." Tr. at 278.

about $1,500. Chavela asked Pena and Conde to get the money back from her, or a car that they had bought with the money. Chavela drove with the two men in Conde's car, a Nissan, to the Laceys' home. She directed them to the side door, telling them that the Laceys never used the front door, and pointed out a red 2000 Cadillac Eldorado sitting in the driveway as the car she wanted them to take. Pena and Conde approached the side door with Chavela and Pena threw a black muscle shirt over the porch light by the door, blocking the light.

When Arthur Lacey answered the knock at the door, Pena pointed his gun at Arthur's face. Arthur backed up into the house and Conde trained his gun at Arthur's legs. As Pena and Conde entered the house, Arthur ran outside and fled to a neighbor's house. The neighbor called 911 for him. Conde and Pena proceeded to ransack the Laceys' home, in the presence of Collette Lacey, then nine months pregnant, and her young children. After ransacking the home, as he was leaving, Pena saw a pair of keys hanging above the microwave, to the left of the door. Collette was standing about a foot away from him. Pena backed up, grabbed the keys to the Cadillac, and left. Pena drove off in the Cadillac and Conde left with Chavela in his Nissan.

<u>The Luna incident</u>. On the afternoon of April 18, 2010, Fred Luna was in Roswell driving his grandfather's truck, a 1982 Chevrolet pickup truck, down the street by the house where Pena was staying. Conde and Pena were leaving the house when they noticed Luna drive by and give them a "hard look," which Conde described as "mad dogging." Tr. at 276-77. Pena and Conde took offense, and decided to borrow Pena's sister's car and follow him. Luna noticed them at some point after that, and turned into a church parking lot hoping to get away from them. He pulled up to the church entrance and jumped out of the truck, leaving it unlocked with the ignition running. Luna tried the church doors, but they were locked. At that point, Conde and Pena pulled in behind him and pointed loaded guns at him. Pena told Luna that he was going to

"get" Luna as he aimed the gun at Luna, and Conde challenged him, asking him "What's up now?" Luna started running away, but then ran back towards the truck when he realized he had left the keys in it and that Pena and Conde were taking it. As Luna was running back toward the truck, Pena urged Luna to "do it," asking him what he was going to do. Luna was unarmed, and in the face of the firearms brandished by Pena and Conde, he was effectively deterred from trying to stop Pena and Conde. Luna watched as they drove the truck off.

## LEGAL STANDARD

A Rule 29 motion at the close of all evidence tests whether "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In reviewing the sufficiency of the evidence on a Rule 29 motion, the Court must view the evidence in the light most favorable to the prosecution, asking whether "any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Weiss*, 630 F.3d 1263, 1269 (10th Cir. 2010) (internal quotation marks omitted). "The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1129 (10th Cir. 2004) (internal quotation marks omitted). The Court may not "weigh conflicting evidence or evaluate witness credibility" when testing the sufficiency of the evidence. *United States v. Dazey*, 403 F.3d 1147, 1159 (10th Cir. 2005).

## DISCUSSION

A conviction under 18 U.S.C. § 2119 requires the Government to prove the following elements: (1) that Pena took a motor vehicle from the person or presence of another; (2) that he did so by force, violence or intimidation; (3) that he intended to cause death or serious bodily harm; and (4) that the motor vehicle had been transported, shipped, or received in interstate or

foreign commerce. *United States v. Gurule*, 461 F.3d 1238, 1243 (10th Cir. 2006). The intent element "is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." *Holloway v. United States*, 526 U.S. 1, 3 (1999). "The offender does not have to display a desire to injure the victim so long as the jury could infer that, had the victim refused to give up his car, the carjacker would have injured him." *United States v. Vallejos*, 421 F.3d 1119, 1123 (10th Cir. 2005). "[I]t is necessary to look at the totality of the circumstances to determine whether the words and actions of the defendants sufficiently demonstrate a conditional intent to cause serious bodily harm." *United States v. Malone*, 222 F.3d 1286, 1291 (10th Cir. 2000).

Pena first argues that without an explicit or implicit demand for the vehicle, car theft simply does not constitute the federal crime of carjacking. Pena points out that, in the Lacey carjacking, the testimony at trial showed that Pena was already leaving the Laceys' house when he noticed the keys, turned around, grabbed them without a word, and walked out the door. Similarly, Fred Luna had left the keys in his Chevrolet truck and jumped out of the vehicle, conveniently allowing Conde to jump in the truck and drive it away, without ever demanding that Luna give up the truck.

Pena focuses on language from *United States v. Gurule*, 461 F.3d at 1245, and *United States v. Vallejos*, 421 F.3d at 1123-24, to imply that victim must "refuse" to give up the car before the conditional intent element is satisfied. This argument misses the point of "conditional" intent: just as a carjacking need not reach the point of serious harm or death to show the defendant's intent, similarly, it need not reach the point of a refusal of a demand before a fact finder may infer that the defendant would have seriously harmed or killed the victim if a

demand was made and refused. The evidence introduced at trial is sufficient to allow a factfinder to infer that had Collette Lacey attempted to stop Pena from taking the keys, he would have seriously harmed or killed her if necessary in order to steal the car.

Similarly, the fact that the other cases cited by Pena involve an explicit or implicit demand for the car does not convert a "demand" into an element of the crime. As the Government points out, the Supreme Court has noted that the intent element is satisfied when a demand occurs *or* when a defendant takes control of the car: conditional intent is satisfied if, "at the moment the defendant demanded or took control over the driver's automobile, the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." *Holloway*, 526 U.S. at 3. If a demand were a required element, the Supreme Court would have used the word "and," rather than the word "or," to describe the circumstances attending a carjacking. Additionally, an unpublished Tenth Circuit case noted that "[w]hile it is true that [the defendant] never explicitly announced his intent to take the [victims'] car, the law does not require such an affirmation to support intent." *United States v. Owens*, 20 F. App'x 785, at *2 (10th Cir. Oct. 3, 2001) (unpublished table decision).

Pena also argues that because the taking of both vehicles was an "afterthought" to the other motivating factors driving Pena and Conde, they never had the requisite intent to harm the respective victims if the victims refused to give up their cars. As support for this position, Pena cites *United States v. Applewhaite*, 195 F. 3d 679 (3d Cir. 1999). In that case, the Third Circuit held that because "the van was taken as an afterthought in an attempt to get [the victim's] limp body away from the crime scene," "the required scienter was never established." *Id.* at 685. The court explained that, "[a]lthough the defendants clearly intended to seriously harm or kill [the victim], neither their evil intent, nor the force they employed in furtherance of it, had any nexus

6

to the subsequent taking of his van. The force was employed in an attempt to harm [the victim]. It was not used to take his van." *Id.*

Pena's argument on this point fails for two reasons: first, the evidence viewed in the light most favorable to the Government does not show that the taking of the cars was an "afterthought," and second, *Applewhaite* does not establish that a theft as an "afterthought" cannot as a matter of law constitute carjacking. The Government introduced evidence at trial that the entire goal of the Lacey home invasion was to get money back for Chavela, or "a car that they had bought with the money." Tr. at 108. Having found no money in the home, the reasonable inference to be drawn from Pena's behavior on leaving the home is that he saw the keys, connected them with the car Chavela wished them to steal, and took them. Viewed in the light most favorable to the Government, this behavior does not conclusively establish that the taking of the keys was an "afterthought." Similarly, the Luna carjacking was not an "afterthought" to violence for another motive: there was no reason to take the truck and drive it away other than to steal it.

Furthermore, even if the carjackings were an afterthought, *Applewhaite* only teaches that the focus of the conditional intent inquiry must be whether the defendants intended to or actually did seriously harm or kill a victim in order to steal a car, and that the intent to harm or kill a victim simply in order to harm or kill the victim does not suffice. It does not squarely hold that an auto theft as an "afterthought" to violence can never establish a carjacking, if the Government can prove that at the moment the car was stolen, the defendants would have seriously harmed or killed the victim if necessary to take the car. Alternatively, the Court is persuaded that Pena's reading of *Applewhaite*, a Third Circuit case, runs contrary to Tenth Circuit and Supreme Court precedent, as explained above.

Therefore, viewed in the light most favorable to the Government, the evidence introduced at trial is sufficient to show that the Lacey incident and the Luna incident constitute carjacking in violation of 18 U.S.C. § 2119. Defendant's Motion to Dismiss Counts 1, 2, 4, 9, 10 and 12 (Doc. 63) is hereby DENIED.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE