IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,                              No. 2:16-cv-00290-WJ-KRS
                                                                           2:10-cr-02138-WJ-2

v.

TOMMY PENA,

    Defendant/Movant.

## PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

Federal inmate Tommy Pena seeks review of his 480-month sentence pursuant to 28 U.SC. § 2255 and *Johnson v. United States*, 576 U.S. __, 135 S. Ct 2551 (2015) ("*Johnson 2015*"). (Docs.[1] 152 & 160). Pena contends his sentence must be vacated because federal carjacking as well as his prior New Mexico convictions for assault and shooting at an occupied building/dwelling no longer qualify as a crime of violence and violent felonies respectively, under 18 U.S.C. §924(c) and the Armed Career Criminal Act ("ACCA"). (Doc. 160) For its part, the Government agrees Pena is not an armed career criminal post *Johnson 2015* and must be resentenced as a result. (Doc. 160). Nonetheless, the Government insists Pena's conviction and 120-month *consecutive* sentence for using a firearm during a crime of violence under Section 924(c) remain valid. (Doc. 174). Pursuant to an order of reference from United States District Judge William Johnson to conduct proceedings, *see* 28 U.S.C. § 636, the Court has considered the parties' submissions (Docs. 152, 160, 168-69, 171, 174, & 177) and now **RECOMMENDS**

---

[1] The docket numbers ("Doc.") cited herein refer to the criminal docket unless denominated as "CV Doc." In the District of New Mexico, pleadings and other papers submitted in Section 2255 cases commenced before January 1, 2017, are filed in the underlying criminal case and a separately opened civil matter created upon the filing of the motion challenging the sentence. The two electronic dockets, while similar, are not identical. For that reason, the Court uniformly cites to the criminal docket except when a submission is only available among the civil filings.

that Pena be resentenced without any enhancement under the ACCA, but that Pena's amended motion to vacate, set aside, or correct sentence (Doc. 160) be denied in all other respects.

## BACKGROUND

On the evening of April 6, 2010, Arthur Lacey answered the door at his home in Roswell, New Mexico. (Doc. 72, pp. 2-3). On the other side were Pena and co-defendant Jeremy Conde. (*Id.*) Both were armed, and Pena pointed a 9 millimeter handgun at Lacey. (*Id.*). Pena claimed Lacey owed money, which Lacey denied. (*Id.*) At the time, Lacey's pregnant wife, Collette, and three children were inside. (*Id.*, pp. 3-4). Lacey fled to a neighbor's house to call for help. (*Id.*, p. 3). As Lacey exited, Pena and Conde entered the residence. (*Id.*). Conde proceeded to ransack a bedroom in search of Collette's purse. (*Id.*, p. 4). Pena, who had pocketed his gun, searched the living room, taking a laptop while Collette followed him demanding answers. (*Id.*) At some point, the commotion woke Lacey's nine-year-daughter who went to Collette. Conde pointed his gun at Collette and then the child. (*Id.*). As the two felons were leaving, Pena grabbed the key to Lacey's Cadillac El Dorado from its spot above the microwave in the kitchen. (*Id.*, p. 4). Pena drove off in the Cadillac. (*Id.*).

As it turns out, Pena and Conde had been hired by Isabel Saucedo to recover an alleged "debt" for Saucedo in exchange for an ounce of methamphetamine and the El Dorado's tire rims. (*Id.*, p. 2). Saucedo had once lived with the Laceys and kept cash there—proceeds from the methamphetamine she sold—that she insisted Lacey stole. (*Id.*). Saucedo believed that Lacey had bought the Cadillac with the stolen money and directed Pena and Conde to return either with the cash or the car. (*Id.*)

In an unrelated incident four days later, Pena and Conde were driving Conde's car in Roswell. (*Id.*, p. 5). They were armed with the same guns they used at Lacey's house, and both had ammunition with them. (Doc. 60, p. 138). At some point while "cruising," Pena and Conde

drove past a group of individuals. (*Id.*, pp. 138; 141-42). One of the individuals shot at Conde and struck him. (*Id.*, p. 142). Conde shot back. (*Id.*, pp. 142-43). Pena also shot from the vehicle's passenger side by putting his hand out of the window and over the top of the car. (*Id.*, p. 143). After totaling the car, Conde and Pena escaped to a friend's house nearby. (*Id.* pp. 144; 147-49).

On April 18, 2010, in a final incident, Pena and Conde decided they would follow Fred Luna in Pena's sister's car because Luna was "mad dogging" them—giving them threating looks. (Doc. 71, p. 5). As before, both were armed. (*Id.*). After detecting Pena and Conde, Luna pulled into a church parking lot to evade them, exiting the truck and attempting to flee into the church. (*Id.*, p. 6). Pena and Luna caught up, and Luna was unable to get into the church because it was locked. (*Id.*). Pena stayed in the car, and Conde got out to address Luna. (*Id.*). When both pointed their guns at Luna, Luna ran away. (*Id.*). By the time Luna realized he had left his truck running, it was too late: Pena had informed Conde that the keys were in the truck, and Conde jumped in the truck to drive it off. (*Id.*). Later, the two tore out the stereo and left the truck at an abandoned house. (*Id.*, p. 6). The following day, authorities apprehended Pena after a car and foot chase. (*Id.*). At the time, Pena was in possession methamphetamine, two shotguns, and hundreds of rounds of ammunition. (*Id.*).

On July 22, 2010, a federal grand jury returned a seventeen-count indictment against Pena and Conte. (Doc. 19). Specific to Pena, the grand jury charged two counts of conspiracy to commit carjacking contrary to 18 U.S.C. §§ 371 & 2119, one count for Lacey (Count 1) and one for Luna (Count 9); two counts of carjacking and aiding and abetting carjacking in violation of 18 U.S.C. §§ 2 & 2119, one count for Lacey (Count 2) and one for Luna (Count 10); two counts of carrying and using a firearm to commit the carjackings (crimes of violence) contrary to 18 U.S.C. § 924(c), one count for Lacey's car (Count 4) and one for Luna's truck (Count 12); four

counts of being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(2), one count for having a gun at the Lacey home (Count 6), one for the drive-by shooting (Count 8), one for the Luna carjacking (Count 14), and one for the shotguns found when arrested (Count 15); and possessing methamphetamine contrary to 18 U.S.C. § 844(a) (Count 16). (Doc. 19). As prior convictions to support the felon-in-possession counts, the indictment listed crimes Pena committed in New Mexico' Fifth Judicial District: tampering with evidence, aggravated assault, and two instances of shooting at an occupied building/dwelling. (*Id.*).

Pena waived his right to a jury trial, and Judge Johnson conducted a two-day bench trial beginning on December 14, 2010. (Docs. 53; 70-71). At the end of the trial, the Court found Pena guilty on Counts 6 (felon in possession for Lacey carjacking), 8 (felon in possession for the drive-by), 14 (felon in possession for Luna carjacking), 15 (felon in possession at time of arrest), and 16 (possession of methamphetamine), but reserved ruling on the remaining counts. (Doc. 61, pp. 417-26). On May 13, 2010, Judge Johnson issued written findings of fact and conclusions of law, adjudging Pena guilty on Counts 1 (conspiracy to carjack Lacey's Cadillac), 2 (carjacking of Lacey's Cadillac), and 4 (using/carrying a firearm in relation to crime of violence for the Lacey carjacking); and not guilty on Counts 9 (conspiracy to commit carjacking of Luna's vehicle), 10 (carjacking of Luna's vehicle), and 12 (using/carrying a firearm in relation to crime of violence for the Luna carjacking). (Doc. 71).

Following trial, the United States Probation Office prepared a presentence report ("PSR"). (Doc. 179). As is relevant here, the PSR labeled Pena an "armed career criminal" because of two felony convictions for shooting at a dwelling contrary to N.M. Stat. Ann. § 30-3-8(A), and a conviction for aggravated assault with a firearm, N.M. Stat. Ann. § 30-3-2. (Doc. 179, ¶¶ 63-64). Pena was sentenced on November 11, 2011. (Doc. 96). After adopting the uncontested PSR, the Court imposed 180 months incarceration on Counts 1 and 2; 360 months

on Counts 6, 8, 14, and 15; 12 months on Count 16; and 120 months on Count 4. The sentences on Counts 1, 2, and 16 were to run concurrent to the 30 years for Counts 6, 8, 14, and 15, but the ten years on Count 4 was to be served consecutively. (*Id.*). All told, Pena received 480 months or 40 years in federal prison. Pena appealed his convictions for carjacking, use of a firearm during a crime of violence, and conspiracy to commit carjacking. *See United States v. Pena*, 550 Fed. Appx. 563 (10th Cir. 2013). The Tenth Circuit affirmed in an unpublished opinion on December 16, 2013. *See id.* Pena's convictions became final on April 21, 2014, when the Supreme Court denied certiorari. *See* 28 U.S.C. § 2255(f).

Two years later, the Supreme Court invalidated the Armed Career Criminal Act's "residual clause," *Johnson 2015*, 135 S. Ct. 2551, which forms the basis for Castillo's motion for relief under Section 2255. The residual clause refers to the second sentence of Section 924(e)(2)(B)(ii) that broadly defines "violent felony" as "otherwise involv[ing] conduct that presents a serious risk of physical injury to another." 18 U.S.C §924(e)(2)(B)(ii). Important here is that after *Johnson 2015*, an armed career criminal who received a mandatory minimum sentence because of the residual clause is entitled to resentencing. By contrast, an armed career criminal sentenced on the basis of the ACCA's other, disjunctive definitions of "violent felony" is unaffected by *Johnson 2015*: the "force clause," which includes "the use, attempted use, or threatened use of physical force against . . . another"; and the "enumerated clause" identifying specific offenses: "burglary, arson, or extortion . . . [or crimes] involve[ing] explosives." 18 U.S.C. § 924(e)(2)(B)(i)-(ii).

Relying on *Johnson 2015*, Pena argues the 360-month sentence he received for being a felon in possession—as enhanced under the ACCA by the three New Mexico convictions listed in the PSR—is unconstitutional. (Doc. 160). And although *Johnson 2015* does not facially apply to Pena's conviction for using a firearm while carjacking, Section 924(c) contains a

similarly worded residual clause that, Pena contends, must likewise be unconstitutional. (*Id.*) Since Pena filed his motion, the parties have narrowed the issues considerably.[2] For its part, the Government concedes the crime of shooting at an occupied building/dwelling no longer is a violent felony under the ACCA and Pena must be resentenced as a result.[3] Similarly, Pena has abandoned his argument that aggravated assault categorically lacks the "violence" the Supreme Court requires under the ACCA's force clause. *See Johnson v. United State*s, 559 U.S. 133, 140 (2010) ("*Johnson 2010*") (defining "violent force" as "force capable of causing physical pain or injury to another"). As a result, the question before the Court is not whether Pena is entitled to resentencing—he is. Instead, the issue is the scope of resentencing; whether Pena's 120-month

---

[2] *See* Docs. 168, 169, 171, 175, 177. Pena, for example, challenged his career-offender designation under the Sentencing Guidelines, but conceded *United States v. Beckles*, 580 U.S.__, 137 S. Ct. 488 (2016) foreclosed that challenge. Additionally, the Government has backed away from the position that Pena's sentence would be the same because the bulk of Pena's sentence arises from the career-offender designation and not because of any enhancement under the ACCA. The PSR bears out the Government's position, but the Government thereafter concedes re-sentencing is necessary. In light of the parties' agreement and the fact that the Government is not foreclosed from raising the issue as part of resentencing, the Court does not engage in an advisory discussion of the true source of the non-consecutive portion of Pena's prison term.

[3] The Court encourages the parties to "show their math" even when conceding an issue. The Court was left to wonder whether shooting at an occupied building/dwelling under N.M. Stat. Ann. § 30-3-8(A) is a divisible statute and what, if any, alternative elements the Court should compare to the ACCA's force clause, especially in light of *United States v. Pam*, 867 F.3d 1191, 1203 (10th Cir. 2017), which concluded a different section of the same New Mexico statute is divisible. Here, it would seem the provision at issue is also internally divisible, between shootings that do not result "in great bodily harm to another person," those that result "in injury to another person" and those that result "in great bodily harm to another person[.]" N.M. Stat. Ann. § 30-3-8(A). Each alternative carries a different punishment, which typically is dispositive of the divisibility analysis. *See United States v. Titties*, 852 F.3d 1257, 1268 (10th Cir. 2017). Thus, the Court was obligated to "peek at," as the modified categorical commands, Pena's charging/conviction documents to determine which alternate version of shooting at a dwelling/occupied building Pena was convicted of. *See id.* After ordering the Probation Office to produce the PSR and documents, it turns out Pena's shooting did not result in any physical injury, the least of the criminalized conduct at any rate, which did not foreclose the parties' concession under *United States v. Ontiveros*, 875 F.3d 533, 537 (10th Cir. 2017). *Ontiveros*' holding is discussed in more detail below. Ultimately, Pena's conviction of shooting at an occupied building/dwelling likely is no longer a violent felony because there he was not charged and convicted of any element implicating violent force. *Compare United States v. Ford,* 613 F.3d 1263, 1271 (10th Cir. 2010) (concluding that the Kansas statute proscribing discharge of a firearm at occupied building is not a violent felony under the force clause because the "statute requires force against a building or vehicle, but not against the person inside.") *with* N.M. R. Ann. 14-340 (Uniform Jury Instructions) (prosecutor must prove beyond a reasonable that: (1) [t]he defendant willfully shot a firearm at a dwelling and/or occupied building; (2) [t]he defendant knew that the building was a dwelling and/or occupied; [and]; (3) [t]he defendant was not a law enforcement officer engaged in the lawful performance of his duty"). Had the parties alerted the Court to the basis of the concession, it would have assisted the Court greatly.

*consecutive* sentence for using a firearm while carjacking Lacey's Cadillac may be included in Pena's new term of incarceration.

## STANDARD OF REVIEW

Section 2255 permits a federal inmate to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution and laws of the United States[.]" 28 U.S.C. § 2255(a). If the inmate shows "the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack," the Court shall "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*, § 2255(b). In reviewing a Section 2255 motion, the Court presumes that the prior proceedings were lawful. *See Klein v. United State*s, 880 F.2d 250, 253 (10th Cir. 1989). Thus, the movant cannot succeed unless he proves a *Johnson 2015*-related error. *See id.*

## ANALYSIS

To date, the Tenth Circuit has not extended *Johnson 2015*'s holding to Section 924(c)(3)'s residual clause. The Court of Appeals has instead analyzed whether a charged predicate independently meets Section 924(c)(3)'s alternative definitions of "crime of violence," assuming, *arguendo*, the Supreme Court's decision applies. *See*, *e.g., United States v. Wade*, 2017 U.S. App. LEXIS 25735, *5-7 (10th Cir. Dec. 20, 2017) (assuming "for argument's sake that 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague for the same reason that the Supreme Court deemed the Armed Career Criminal Act's residual clause unconstitutionally vague," but concluding [the defendants'] brandishing convictions may survive under [§ 924(c)(3)'s force] clause"); *United States v. Cravens*, 2017 U.S. App. LEXIS 25562, *6, n. 4 (10th Cir. Dec. 19, 2017) ("Because federal armed bank robbery satisfies the [force] clause of § 924(c)(3)(A), we

need not decide whether the risk of force clause is unconstitutional in light of *Johnson*[*2015*.]"). Although there is good reason to reject rote application of *Johnson 2015* in the context of Section 924(c) offenses,[4] the Court need not weigh in on the current circuit split because carjacking under federal law is independently a crime of violence under the force clause.

## Whether Section 2119's "Taking-by-Intimidation" Provision Contains as an Element the Threaten Use of Violent Force

To determine whether carjacking under 18 U.S.C. § 2119 satisfies Section 924(c)(3)'s force clause, the Court employs the "categorical approach."[5] *See United States v. Pam*, 867 F.3d

---

[4]For example, the Eleventh Circuit has held that "there are material textual differences between the residual clause in [ACCA cases] invalidated in *Johnson* and the risk-of-force clause in § 924(c)(3)(B)." *Ovalles v. United States*, 861 F.3d 1257, 1266-1267 (11th Cir. 2017). According to *Ovalles*, the differences are threefold:

> First, Congress tailored the statutory standard to the risk that "physical force" against person or property will be "used" in the course of committing the offense, which describes more concrete conduct than the ACCA's reference to any offense conduct that could present a "potential" risk of "physical injury." *See* 18 U.S.C. § 924(c)(3)(B). The "use" of "physical force" against the person or property of another is a significantly more specific and focused requirement than the ACCA's general risk-of-injury requirement. Section 924(c) trains solely on whether the defendant herself might engage in a certain type of behavior—using or threatening physical force—in the course of committing the offense, not whether her actions may produce a potential risk of physical injury in a more tangential or attenuated way.
> Second, § 924(c)(3)(B) requires the risk to arise in "the course of committing the offense" and therefore excludes risks arising after the offense is completed—the aspect of the residual clause's risk analysis that *Johnson* characterized as "[c]ritical[]" to its vagueness holding. 576 U.S. at , 135 S. Ct. at 2557. That textual limitation serves in part as a temporal restriction on the scope of the risk analysis.
> Third, Congress did not include a confusing list of exemplar crimes, and so freed courts from having to conduct the analysis by reconciling the different risks entailed in the listed offenses. Section 924(c)(3)(B) is not plagued by the same contradictory and opaque indications as the ACCA's residual clause on "how much risk" is necessary to satisfy the statute, because the phrase "substantial risk" is not preceded by a "confusing list of examples." *Id.* at, 2561. Combined with the textual distinctions discussed by the other circuits, these distinctive features of § 924(c)(3)(B) further make it materially different from the residual clause in § 924(e).

*Id.* at 1266-67 (joining the Second, Sixth, and Eighth Circuit in holding *Johnson 2015* does not apply to Section 924(c)(3)'s residual clause). The Seventh Circuit, however, has reached the opposite result. *See United States v. Cardena*, 842 F.3d 959, 998 (7th Cir. 2016) (concluding that § 924(c)(3)(B)'s residual clause "is virtually indistinguishable from the clause in *Johnson [2015]* that was found to be unconstitutionally vague").

[5] As above, the parties leave divisibility out of the equation and appear to assume Section 2119 is indivisible. The assumption is incorrect, but the distinction is without a difference to the end analysis. Federal carjacking contains three numbered subsections that ascribe different punishments on a scale depending on whether no harm or serious bodily harm results in the course of taking the subject vehicle, which is proof positive of a divisible statute. *See* § 2119(1)-(3); *United States v. Titties*, 852 F.3d 1257, 1268 (10th Cir. 2017). Thus, although the Court begins categorically here, it must employ the "modified categorical approach" and "consult record documents . . . for the limited purpose of identifying which of the statute's [subsections] formed the basis of the . . . [predicate]

1191, 1203 (10th Cir. 2017). Applying this approach, the Court distills the predicate offense to its constituent parts and determines whether any "has as an element the use, attempted use, or threatened use of physical force against the person of another." *United State v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017) (citing 18 U.S.C. § 924(e)(2)(B)(i) & *Descamps v. United States,* __ U.S. __, __, 133 S. Ct. 2276, 2283 (2013)). Although Section 924(c)(3) does not define "physical force," the Supreme Court has construed the term to mean "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson 2010*, 559 U.S. at 140. Under the categorical approach, the Court's task then is to discern whether the predicate offense matches *Johnson 2010*'s standard of "physical force" by "[f]ocusing on the elements of the crime of conviction, not the underlying facts." *Harris*, 844 F.3d at 1263.

Section 2119(1) has four elements: (1) "the intent to cause death or serious bodily harm"; while (2) "[t]aking a motor vehicle from the person or presence of another"; (3) "by force and violence or by intimidation, or attempt[ting] to do so"; that (4) does not result in "serious bodily injury" or "death."[6] The parties do not dispute that taking a car by "force and violence" satisfies

---

conviction." *Titties*, 852 F.3d at 1266. The Court has done so here for the sake of completeness and without assistance from the parties, which could have saved time. It appears Pena was convicted under the alternative of federal carjacking that does not contain as an express element conduct resulting in physical injury or death. To be sure, under *Ontiveros*' holding explained below, a conviction under Section 2119(2) or (3) unquestionably satisfies the violent physical force requirement of *Johnson 2010* and would be a crime of violence. Consequently, Pena's argument under Section 2119(1) is at least debatable rather than squarely foreclosed, leaving the Court to focus on the language common to all three subsections under the categorical approach. As a result, the Court's use of the term categorical approach above is shorthand for the Court's divisibility analysis, its determination that Section 2119 is divisible, its peek at Judge Johnson's findings of fact and conclusions of law to determine Pena was convicted for carjacking under subsection 1, and the Court's ultimate reversion to the categorical approach as the final step of the modified categorical under controlling law. *See Titties*, 852 F.3d at 1269.

[6] Section 2119 reads in its entirety:

> Whoever, with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall--
> (1) be fined under this title or imprisoned not more than 15 years, or both,
> (2) if serious bodily injury (as defined in section 1365 of this title [18 USCS § 1365], including any conduct that, if the conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title [18 USCS § 2241 or 2242]) results, be fined under this title or imprisoned not more than 25 years, or both, and

the Supreme Court's force standard. The concession is well-taken: "violent force" is dispositive of the analysis under *Johnson 2010*. Instead, the crux of Pena's argument is the "intimidation" language that immediately follows. According to Pena, a taking by "intimidation" does not equate to a threat to use "violent force" as Section 924(c)(3)'s force clause requires. The Court is not persuaded by Pena's reasoning.

As Pena acknowledges, the Tenth Circuit has held that carjacking is "always a crime of violence because §2119 requires taking . . . a vehicle by force and violence or by intimidation, and the crime of carjacking carries with it a substantial risk of the use of physical force." *United States v. Brown*, 200 F.3d 700, 706 (10th Cir. 2000). To be fair, Pena makes a point: *Brown*'s holding parrots Section 924(c)(3)'s residual clause and, arguably, implicates *Johnson 2015*'s constitutional concern over vagueness. But Pena's implication that *Brown* compels the Court to conclude carjacking falls categorically short of a crime of violence asks too much. *Brown* rests on two independent conclusions. Carjacking is a crime of violence because the offense requires a taking by violent force or intimidation, **and** because of the "substantial risk" of force. In other words, Section 2119 satisfies *both* the force and the residual clauses, not simply the residual clause. Thus, *Brown*'s former determination is not implicated by *Johnson 2015* at all and, from what the Court can discern, remains good law.

Even if *Brown* is not controlling, "intimidation" under Section 2119 contains an element of the threatened use of violent force. In the Tenth Circuit, to take a motor vehicle by intimidation and thus be guilty of the carjacking, the defendant's conduct must make "a person of ordinary sensibilities be fearful of bodily harm." *See*, *e.g.,* Tenth Circuit Pattern Jury Instructions Criminal No. 2.77 (2011).[7] Objectively, instilling fear in the hypothetically

---

        (3)  if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

[7] The Court recognizes that the jury instruction concerns federal bank robbery under 18 U.S.C. § 2113. Federal courts in the Tenth Circuit have often borrowed Section 2113 jurisprudence to inform determinations under Section

reasonable person necessarily includes the threatened use of violent physical force. Further, "'intimidation' . . . requires a contemporaneous threat to use force that satisfies *Johnson* because the statute requires that the defendant act with 'the intent to cause death or serious bodily harm.'" *United States v. Gutierrez*, 876 F.3d 1254, __, 2017 U.S. App. LEXIS 25071, *6 (9th Cir. 2017) (citing 18 U.S.C. § 2119). In interpreting identical language from the federal bank robbery statute, the Tenth Circuit has said as much: "[a]lthough [18 U.S.C.] § 2113(a) includes a taking 'by intimidation,' courts have stated that 'intimidation' involves the threat of physical force." *United States v. McGuire*, 678 Fed. Appx. 643, 645 (10th Cir. 2017) (citing *United States v. McBride*, 826 F.3d 293, 295-96 (6th Cir. 2016)). The Court sees no reason—and Pena offers none—to reject *McGuire* as persuasive of how the Tenth Circuit would rule under Section 2119.

      Instead, Pena complains that defendant does not need to *do*—or *threaten to do*— anything during the taking of the vehicle. To find an element violent force, Pena argues, the Court would have to focus on "the physical effect on the victim," rather than the "mechanism by which the force is imparted," which is incorrect analysis. (Doc. 29 (citing *United States v. Perez-Vargas*, 414 F.3d 1282, 1285-87 (10th Cir. 2005) & *United States v. Rodriguez-Enriquez*, 518 F.3d 1191, 1194 (10th Cir. 2008)). As the Court understands the argument, a hypothetical defendant could, say, bang on something, leaving the "intimidation" entirely to the victim's perception. In this scenario, Pena posits, no one has used or threatened to use force against anyone. *United States v. Ontiveros*, 875 F.3d 533, 537 (10th Cir. 2017), however, forecloses relief under Pena's "mechanism" theory. In that case, the Tenth Circuit parted company with *Perez-Vargas* and *Rodriguez-Enriquez*, on which Pena relies, in light of the Supreme Court's decision in *United*

---

2119, *see, e.g.*, *United States v. Overstreet*, 40 F.3d 1090, 1094 (10th Cir. 1994) ("[O]ur observation regarding the clearly evidenced intent of Congress that section 924(c)(1) be broadly applied to add a consecutive five years to the punishment of a violent crime committed with a gun is no less true with regard to section 2119 than it was to section 2113."); *United States v. Folse*, 2017 U.S. Dist. LEXIS 165332, *57 (D.N.M. Oct. 5 2017) (explaining "[t]he bank robbery statute . . . contains the identical 'by force and violence, or by intimidation' phrase at issue here"), and Pena himself analyzes the "intimidation" element of both statutes interchangeably.

*States v. Castleman*, 134 S. Ct. 1405 (2014). Quoting *Castleman*, the court of explained the fact that physical "harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Ontiveros*, 875 F.3d at 537. Thus, an offense remains a crime of violence even if there is no "actual [or threatened] kenetic force to cause the harm[.]" *Id.*

Finally, the "quantum of force" necessary to commit carjacking under Section 2119(1) is not *de minimus* as Pena says. In Pena's view, carjacking is a form of robbery, which is not necessarily itself a crime violence. But Pena fails to identify, let alone cite the text of any robbery statute that contains the same "intimidation" language, and the Court declines the offer to carry Pena's burden to prove entitlement to relief under § 2255. *See United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000). Regardless, the federal courts of appeal that have considered the issue *post Johnson 2015* have all concluded that carjacking is sufficiently violent to satisfy *Johnson*. *See Gutierrez*, 876 F.3d 1254 (joining the Fourth and Fifth Circuits to conclude carjacking by intimidation is a crime of violence); *United States v. Evans*, 848 F.3d 242, 247-48 (4th Cir. 2017) (explaining "[w]e are not aware of any case in which a court has interpreted the term 'intimidation' in the carjacking statute as meaning anything other than a threat of violent force" (citation omitted)); *United States v. Jones*, 854 F.3d 737, 740-41 (5th Cir. 2017) (carjacking by intimidation is a crime of violence for the same reason federal bank robbery "taking by intimidation" is a crime of violence); *Ovalles v. United States*, 861 F.3d 1257, 1267-69 (11th Cir. 2017) ("carjacking under §2119(1) categorically qualifies as a crime of violence").

Notwithstanding Pena's arguments to the contrary, his conviction for using a firearm during a crime of violence—carjacking—survives the abolition of the residual clause in *Johnson 2015*. Pena's resulting 120-month consecutive sentence on Count 4 of the indictment is therefore constitutional, and Pena need not be resentenced for his conviction on that offense.

**CONCLUSION**

For the reasons stated above, the Court **RECOMMENDS** that Pena's motion under 28 U.S.C. § 2255) (CV Docs. 1& 10; Docs. 152 & 160) be **GRANTED IN PART** and **DENIED IN PART**. Pena should be resentenced without the ACCA enhancement, but his conviction under 18 U.S.C. § 924(c) and resulting consecutive sentence are proper.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**