# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                                                                            No. 2:10-cr-2138-WJ

TOMMY PEÑA,

    Defendant.

## MEMORANDUM OPINION AND ORDER OVERRULING THE UNITED STATES' OBJECTIONS TO THE SENTENCING GUIDELINES CALCULATION IN THE ADDENDUM TO PRESENTENCE REPORT

THIS MATTER comes before the Court following a hearing on the United States' Objections to the PSR and Sentencing Memorandum (**Doc. 200**, filed 6/8/18), Defendant's Sentencing Memorandum (**Doc. 205**, filed 7/26/18), and the United States' Objections to Addendum to Presentence Report (**Doc. 214**, filed 9/8/18). The Court has reviewed the parties' pleadings, including Defendant's Response to the Addendum to the Presentence Report and United States' Objections (**Doc. 216**, filed 9/26/18), as well as the reports from the United States Probation Office (**Docs. 182, 190, 212**), and heard the arguments of counsel at the September 10, 2018 hearing and considered the applicable law. For the reasons stated below, the Court overrules the Government's objections to 1) the single grouping of the counts of conviction and 2) the non-application of the enhancement in U.S.S.G. § 2K2.1(b)(6)(B). The Court has determined that in the matter of resentencing Defendant Tommy Pena under the 2016 United States Sentencing Guidelines, the offense level is 22 and the criminal history category is IV, and therefore the correctly calculated advisory Sentencing Guidelines range is 63–78 months. Including the mandatory 60-month consecutive sentence for the conviction in Count 4 under 18

U.S.C. § 924(c), the total adjusted advisory Sentencing Guidelines range is 123–138 months' imprisonment. The Court reserves judgment on the United States' request for an upward variance until the Court pronounces the sentence in this matter.

## STATEMENT OF THE CASE

Based on the series of events that transpired between April 6, 2010, and April 19, 2010, Defendant was found guilty by this Court of four counts of being a felon in possession of a firearm and/or ammunition in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2) (Counts 6, 8, 14, 15), one count of conspiracy to commit carjacking in violation of 18 U.S.C. § 371 (Count 1), one count of carjacking and aiding and abetting in violation of 18 U.S.C. § 2119 and § 2 (Count 2), one count of possession of methamphetamine in violation of 21 U.S.C. § 844(a) (Count 16), and one count of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4). Doc. 96, Judgment, filed 12/7/11; Doc. 71, Findings of Fact and Conclusions of Law, filed 5/13/11. At the time, Defendant was exposed to an enhanced sentence as an Armed Career Criminal. PSR, ¶¶ 63–64; Doc. 182. The Court imposed a total sentence of 480 months' imprisonment with five years' supervised release, which was within the United States Sentencing Guidelines ("Sentencing Guidelines") range under the 2010 version of the Sentencing Guidelines. Doc. 96; PSR, ¶ 104.

After the United States Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), Defendant was no longer an Armed Career Criminal, and he successfully filed a petition for resentencing under 28 U.S.C. § 2255. *See* Docs. 180, 181. The Court determined that Defendant would be resentenced under the 2016 United States Sentencing Guidelines, and the parties submitted extensive briefing on the advisory Sentencing Guidelines range and on the United States' request for an upward variance. There was a hearing before this Court on

September 10, 2018, at which time counsel offered oral arguments and the United States presented the testimony of Reshay Childress of the Correctional Programs Division of the Bureau of Prisons in support of its request for an upward variance. The Court informed the parties at the hearing that it would take this matter under advisement to ensure the correct calculation of the advisory Sentencing Guidelines range. The Court has now determined the proper advisory Sentencing Guidelines range to be 63–78 months based on an offense level of 22 and criminal history category IV, for a total adjusted range of 123–138 months' imprisonment with the § 924(c) 60-month consecutive sentence.

**BACKGROUND**

I. **Factual Summary of 2010 Events**

After Defendant executed a knowing and voluntary waiver of jury trial (Docs. 53, 55), this Court conducted a bench trial on December 14 and 15, 2010. Doc. 57. Following the bench trial, the Court found Defendant guilty of Count 16 (possession of methamphetamine) and Counts 6, 8, 14, 15 (violations of § 922(g)). The Court allowed both parties to submit written arguments on Counts 1, 2, 4, 9, 10, and 12. On May 13, 2011, the Court filed the Findings of Fact and Conclusions of Law (Doc. 71) regarding four incidents underlying the charged conduct: the Lacey carjacking on April 6, 2010; the drive-by shooting on April 10, 2010; the Luna car theft on April 18, 2010; and Defendant's arrest on April 19, 2010. Doc. 71. The offense conduct is summarized below to establish how the events were charged and which counts resulted in conviction for the purposes of calculating the advisory Sentencing Guidelines range.

    A. **April 6, 2010: Lacey Carjacking**

Defendant and his co-defendant Jeremy Conde ("Conde") were hired by Isabel Saucedo ("Chavela") to retrieve cash from the household of Arthur Lacey ("Lacey") in retribution for

Chavela's belief that Lacey had stolen cash from her that she was keeping in the Lacey household in Roswell, New Mexico. Doc. 71, ¶¶1–3. In the alternative to retrieving cash from the Lacey household, Pena and Conde agreed with Chavela that they could take a car that Chavela believed Lacey had purchased with the cash. ¶¶ 1–3. Conde, Pena, and Chavela went to the Lacey home on April 6, 2010. ¶ 6. Pena carried a 9 mm handgun that was loaded; Conde carried a firearm with bullets in the clip, but not in the chamber. ¶ 7. Chavela pointed to the 2000 Cadillac Eldorado in the front yard and said, "That's the car," meaning that was the car she wanted Pena and Conde to take. ¶ 9. When Lacey answered the door, Pena pointed the gun at Lacey's face and made gestures as though he intended to shoot Lacey. ¶¶ 11–12. As Pena and Conde entered the house, Lacey fled to a neighbor's house. ¶ 14. Conde and Pena ransacked the Lacey home in the presence of Lacey's wife, Collette Lacey ("Collette"), who was nine months pregnant, and her young children. ¶ 15. Conde pointed his gun at Collette and at one of the children, and Pena's gun remained in his pocket. ¶¶ 16, 18. As Pena was leaving the house with various stolen items, Pena noticed some keys near the door. ¶ 21. He backed up, grabbed the keys to the Cadillac, and left the house. ¶ 21. Pena drove away in the Cadillac. ¶ 23.

Regarding the events that took place at the Lacey house on April 6, 2010, Defendant was charged with one count of conspiracy to commit carjacking (18 U.S.C. § 371) (Count 1), one count of carjacking and aiding and abetting (18 U.S.C. § 2119 and § 2) (Count 2), one count of being a felon in possession of a firearm (18 U.S.C. § 922(g)(1) and § 924(a)(2)) (Count 6), and one count of using and carrying a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)) (Count 4). The Court found Defendant guilty of the four counts related to the Lacey incident.

B. April 10, 2010: Drive-By Shooting

In the evening of April 10, 2010, Conde and Pena drove down East Ballard Street in Roswell and Pena fired several shots at the people on the street with a 9 mm handgun. Doc. 71, ¶¶ 26–27. Defendant was charged with one count of being a felon in possession of a firearm (18 U.S.C. § 922(g)(1) and § 924(a)) (Count 8), of which the Court found him guilty.

### C. April 18, 2010: Luna Car Theft

In the afternoon of April 18, 2010, Conde and Pena were leaving the house where Pena was staying at the time when they noticed Fred Luna ("Luna") drive by them. Doc. 71, ¶¶ 30–31. Conde and Pena thought Luna was "mad-dogging" them by cursing at them and giving them a "hard look," so Conde and Pena decided to borrow Pena's sister's vehicle to follow Luna. ¶¶ 31–32. Conde was armed with a loaded .22-caliber handgun and Pena was armed with a black semiautomatic handgun. ¶ 33. After Luna noticed he was being followed, he pulled into a church entrance and jumped out of his truck, leaving the door open and the ignition running. ¶ 35. The doors of the church were locked and Luna could not enter. ¶ 36. At that point, Conde and Pena pulled into the church parking lot and both pointed guns at Luna. ¶¶ 37–38. Luna started running away to exit the church parking lot. ¶ 40. Pena noticed that Luna's truck was still running, and mentioned this fact to Conde; at the time of this comment, Luna was almost out of the parking lot and into the street. ¶ 41. Conde got into the truck and drove away. ¶ 42. As Conde was driving away, Luna starting running back towards the truck, but after Pena urged Luna to "do it" and asked what he was going to do, Luna decided the truck was not worth being shot. ¶ 45.

Regarding the events that took place April 18, 2010, Defendant was charged with one count of carjacking and aiding and abetting (18 U.S.C. § 2119 and § 2) (Count 10), one count of conspiracy to commit carjacking (18 U.S.C. § 371) (Count 9), one count of being a felon in possession of a firearm (18 U.S.C. § 922(g)(1) and § 924(a)) (Count 14), and one count of using

5

and carrying a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)) (Count 12). Of these charges related to the Luna events, the Court found Defendant guilty of only the offense conduct in Count 14. The Court found the evidence was not sufficient to support a conviction on the related three counts because "at the time intent to steal the truck was formed, and at the time the truck was actually stolen, Luna was not 'sufficiently near to the vehicle for it to be within reach, inspection, or control and, absent threat or intimidation, to be able to maintain control of it.'" ¶ 28. The Court could therefore not find Pena guilty of aiding and abetting the underlying offense conduct in Count 10, nor was the evidence sufficient for the conspiracy charge in Count 9 as alleged in the indictment. ¶ 31. Finally, the evidence was insufficient to support the indictment charge for violation of § 924(c) in Count 12 that Pena used or carried a firearm during and in relation to the crime of carjacking the truck on April 18, 2010 because no carjacking occurred. ¶ 33.

### D. April 19, 2010: Pena's Arrest

When Defendant was arrested on April 19, 2010, he was in possession of two black shotguns, almost a hundred rounds of miscellaneous ammunition, and 6.4 grams of methamphetamine. Doc. 71, ¶¶ 49–51. He was charged with one count of being a felon in possession of a firearm (18 U.S.C. § 922(g)(1) and § 924(a)) (Count 15) and one count of possession of methamphetamine (21 U.S.C. § 844(a)) (Count 16). The Court found Defendant guilty of both counts.

## II. Original Sentence under 2010 Sentencing Guidelines

For the original sentencing on November 17, 2011, the United States Probation Officer made the following determinations about the advisory Sentencing Guidelines range in the Pre-Sentence Report ("PSR"): Group 1 (Counts 1, 2, and 6) had an adjusted offense level of 22 (PSR,

¶¶ 33–40); Group 2 (Counts 8, 14, and 15) had an adjusted offense level of 24 (PSR, ¶¶ 41–47), and Group 3 (Count 16) had an offense level of 4 (PSR, ¶¶ 48–54). The combined adjusted offense level was 26 under U.S.S.G. § 3D1.4. PSR, ¶ 62. Defendant was exposed to an enhanced sentence as an Armed Career Criminal, however, because of two felony convictions for shooting at a dwelling, in violation of NMSA § 30-3-8(A), and a conviction for aggravated assault with a firearm, in violation of NMSA § 30-3-2. PSR, ¶¶ 63–64; Doc. 180 at 4. The Court determined that Count 4 carried a mandatory minimum sentence of 7 years' imprisonment for using and brandishing a firearm in relation to the carjacking that occurred on April 6, 2010, pursuant to § 924(c)(1)(A)(ii). PSR, ¶¶ 67, 103. With enhancements as an Armed Career Criminal and as a Career Offender, the advisory Sentencing Guidelines range was calculated to be 360 months' incarceration to life imprisonment. PSR, ¶¶ 63–64, 104.

The Court adopted the PSR and imposed 180 months' incarceration as to Counts 1 and 2; 360 months' incarceration as to Counts 6, 8, 14, and 15; and 12 months' incarceration on Count 16, all of which were to run concurrently. The Court imposed 120 months' incarceration on Count 4, which was to run consecutively, pursuant to § 924(c)(1)(A)(ii) and U.S.S.G. § 2K2.4(b). In total, the Court imposed 480 months' imprisonment, which was within the advisory Sentencing Guidelines' range. Doc. 96; PSR, ¶ 104.

## III. Resentencing under 2016 Sentencing Guidelines

### A. Petition under *Johnson v. United States (2015)*

The Supreme Court of the United States invalidated the Armed Career Criminal Act's "residual clause" in *United States v. Johnson*, 135 S. Ct. 2551 (2015), which formed the basis of Defendant's motion for relief under 28 U.S.C.§ 2255. Docs. 152, 160. United States Magistrate Judge Kevin Sweazea found that Defendant was entitled to resentencing because the crime of

7

shooting at an occupied building/dwelling no longer qualified as a violent felony under the ACCA. Doc. 180 at 6, filed 1/12/18. Notably, the Government conceded this point. *Id.* In the Proposed Findings and Recommended Disposition ("PFRD"), Magistrate Judge Sweazea determined that although Defendant was entitled to resentencing without the ACCA enhancement, Defendant's conviction for Count 4 under § 924(c) and the resulting consecutive sentence were constitutional because his conviction for using a firearm during a crime of violence—in this case, carjacking—survived the abolition of the residual clause in *Johnson*. *Id.* at 12–13. This Court adopted the PFRD in an Order granting in part Defendant's request for resentencing without the ACCA enhancement, and denying Defendant's motion in all other respects. Doc. 181, filed 2/1/18.

**B.     Procedural History of 2018 Resentencing under 2016 Sentencing Guidelines**

The United States Probation Office ("Probation") submitted a Retroactive Sentencing Review Memorandum (Doc. 182, filed 2/23/18), in which Probation maintained that Defendant's original sentence could be corrected under the 2010 Sentencing Guidelines by not including the ACCA enhancement. Under this approach, Defendant's total Sentencing Guidelines range was 480 months to life imprisonment, including the § 924(c) 120-month consecutive sentence. *See* Doc. 182. Defendant filed his Objection to Probation's Memorandum (Doc. 184, filed 3/8/18) on the grounds that he was entitled to resentencing under the 2016 Sentencing Guidelines. Subsequently, the Court issued an Order for Briefing on Specific Legal Issue (Doc. 185, 3/9/18) regarding which version of the Sentencing Guidelines applied at Defendant's resentencing. Defense and the Government submitted the Parties' Joint Response (Doc. 186, filed 3/16/18), which maintained that Defendant was entitled to a full resentencing under the 2016 version. The Probation Office submitted its Amended Memorandum (Doc. 190, filed 3/27/17), which

8

continued to assert that Defendant should receive a corrected sentence under the 2010 Sentencing Guidelines without the ACCA enhancement. Despite the position that Defendant was not entitled to a full resentencing, however, Probation included the Sentencing Guidelines calculations under both the 2010 version (480 months–life, including 120-month § 924(c) consecutive sentence) and the 2016 version (63–78 months base range, 183–198 months adjusted range with § 924(c) 120-month sentence) in its Amended Memorandum. *See* Doc. 190. The Court sustained Defendant's objection and ruled that Defendant would receive a de novo resentencing under the 2016 Sentencing Guidelines. Doc. 193, filed 4/6/18.

Responding to the calculations in the last Amended Memorandum submitted by the Probation Office (Doc. 190), the United States filed its Objections to the PSR and Sentencing Memorandum (Doc. 200, filed 6/8/18) on the grounds that Defendant's total adjusted offense level under the 2016 Sentencing Guidelines should be 28 and his criminal history category should be IV, making his range 110–137 months, prior to adding the § 924(c) consecutive sentence. The Government objected to Probation's calculation on the grounds that 1) Probation incorrectly proposed a single grouping of the counts of conviction instead of two groupings, as well as 2) Probation incorrectly did not apply the 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). The Government also proposed that the § 924(c) sentence for Count 4 should be the mandatory minimum of 5 years, as opposed to the previously undisputed 7-year mandatory minimum, and as opposed to the 10-year sentence included by Probation in the Amended Memorandum (which was in accordance with the prior sentence imposed by this Court). *See* Doc. 200 at 8 n.9.[1] Thus, the United States calculated the Sentencing Guidelines'

---

[1] As the Government explains in its first Sentencing Memorandum (Doc. 200 at 8 n.9), the indictment charged Defendant with possessing the firearm in furtherance of a crime of violence pursuant to 18 U.S.C. § 924(c)(1)(A)(i). The penalty provision calls for a mandatory minimum of five years, which runs consecutive to any other sentence. The Court previously found that Defendant brandished the firearm when he committed the offense,

total adjusted range to be 170–197 months. Doc. 200. The United States then requested an upward variance to a total sentence of 30 years' imprisonment. Doc. 200. In its response brief, the defense agreed with the United States' suggested advisory Sentencing Guidelines range of 170–197 months but opposed the request for the upward variance, instead requesting a sentence on the low-end of the advisory range. Doc. 205, filed 7/26/18. The parties proceeded through briefing with a focus on the Government's request for an upward variance, as the defense and the United States appeared to be in agreement about the 2016 Sentencing Guidelines range. *See* Docs. 200, 205, 208, 210, 211.

On September 5, 2018,[2] Probation filed its Addendum to the Presentence Report (Doc. 212), in which it responded to the parties' objections regarding the calculation of the advisory Sentencing Guidelines' range. The Probation Office maintained that the advisory Sentencing Guidelines' range was properly calculated in its previous Memorandum at 63–78 months, but Probation did agree with the Government's assertion that the § 924(c) charge required a 5-year mandatory minimum. Doc. 212 at 3. Specifically, Probation asserted that the counts of conviction correctly group into a single unit, and that § 2K2.1(b)(6)(B) was inapplicable because of the § 924(c) conviction. In response to the last report from Probation, the United States filed its Objections to Addendum to Presentence Report (Doc. 214) on September 8, 2018. The Government changed its position on the Sentencing Guidelines range, but still asserted that the correct grouping was different from what Probation had proposed. Furthermore, the Government maintained that the 4-level enhancement under § 2K2.1(b)(6)(B) was still applicable based on

---

but the seven-year mandatory minimum that typically accompanies the brandishing of a firearm is not applicable here because it was not alleged in the indictment that Defendant brandished the firearm. For these reasons, the Government conceded that the appropriate Sentencing Guidelines range on the § 924(c) charge is the five-year mandatory minimum pursuant to § 2K2.4(b).

2  At this point, the Court has rescheduled the sentencing hearing in this matter to September 10, 2018. The United States had also provided notice of witness testimony for the upcoming hearing. Doc. 211.

other underlying conduct unrelated to the § 924(c) conviction. The Government proposed that the correct range was 92–115 months, and 152–175 months with the § 924(c) sentence.

At the hearing on September 10, 2018, the defense initially indicated it was in agreement with the Government, but after the Court heard argument on this issue, defense agreed to submit a brief with its position on the correctly calculated Sentencing Guidelines range in this matter. On September 26, 2018, Defendant submitted his Response to the Addendum to the Presentence Report and United States' Objections (Doc. 216), in which Defendant expresses his agreement with Probation's calculation of the range to be 63–78 months, and 123–138 months with the § 924(c) consecutive sentence.

## DISCUSSION

For the reasons stated below, the Court overrules the Government's two objections to the Addendum to the Presentence Report, those being namely 1) that the single grouping of the counts of conviction is incorrect and 2) that the enhancement under § 2K2.1(b)(6)(B) should apply. The Court finds that the correct Sentencing Guidelines range is 63–78 months' imprisonment based on an offense level of 22 and a criminal history category of IV, which makes the total adjusted advisory Sentencing Guidelines range 123–138 months' imprisonment when including the 60-month mandatory minimum for the § 924(c) charge.

Pursuant to U.S.S.G. § 1B1.1, the Court must first determine the appropriate Sentencing Guidelines range for each count of conviction based on the proper offense section guideline. Then, the Court applies the appropriate specific offense characteristics, and after applying adjustments, the Court groups the various counts and adjusts the offense level pursuant to U.S.S.G. § 3D1.1. *See* U.S.S.G. § 1B1.1. The Tenth Circuit has stated that the district court errs when it groups the counts of conviction prior to determining the specific offense characteristics.

*See United States v. Hasson*, 287 F. App'x 712, 718 (10th Cir. 2008) ("Once the base offense level for each count has been determined, the court must then apply any appropriate specific offense characteristics from Chapter Two of the Guidelines, and then any relevant adjustments from the first three parts of Chapter Three of the Guidelines. Only at that point may the court group various counts together, if required, and adjust the overall offense level.").

Counts 1 and 2 are controlled by U.S.S.G. § 2B3.1 for robberies, which requires a base offense level of 20 for both counts. Counts 1 and 2 also each receive a two-level enhancement pursuant to subsection (5) because a carjacking occurred; thus the total offense level for Count 1 and Count 2 is level 22.

The § 922(g) convictions in Counts 6, 8, 14, and 15 are governed by U.S.S.G. § 2K2.1 for firearms. All four counts receive a base offense level of 20 pursuant to subsection (a)(4)(A), which requires a level 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense[.]" § 2K2.1(a)(4)(A). As the PSR provides, and as the parties agree,[3] Defendant sustained a conviction for aggravated assault with a firearm in violation of NMSA § 30-3-2(A). PSR, ¶¶ 63–64; Doc. 180 at 4. The Tenth Circuit ruled in *United States v. Maldonado-Palma*, 839 F.3d 1244 (10th Cir. 2016), that "aggravated assault with a deadly weapon under N.M. Stat. Ann. § 30-3-2(A) is categorically a crime of violence" in this situation. 839 F.3d at 1250 (explaining "the import of New Mexico's requirement that the deadly weapon be actively employed in committing the assault"); *see United States v. Sanchez*, No. CIV 16-659 JAP/GBW;

---

[3] In its first Sentencing Memorandum, the United States points out that Defendant's 2005 conviction for aggravated assault with a firearm under NMSA § 30-3-2(A) is a crime of violence. Doc. 200 at 7 n.5. The Government notes that Defendant conceded this point in his Supplemental Briefing on his *Johnson* claim. Doc. 171 at 14 ("Mr. Peña recognizes that, since he filed his Amended Motion, the Tenth Circuit has held that aggravated assault with a deadly weapon in violation of N.M.S.A 1978, § 30-3-2(A) is categorically a crime of violence for purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii)." (citing *Maldonado-Palma*, 839 F.3d at 1244)). The United States also notes that U.S.S.G. § 2L1.2 and § 2K2.1 define "crime of violence" in the same way. Doc. 200 at 7 n.6.

No. CR 13-961 JAP, 2017 U.S. Dist. LEXIS 158378, at *16 (D.N.M. Sept. 27, 2017) (Parker, S.J.). Thus, the base offense level for the four § 922(g) counts is level 20. Next, § 2K2.1(b)(1) provides the applicable specific offense characteristic, which is a two-level enhancement to these four counts because the offense involved three or more firearms. § 2K2.1(b)(1)(A).[4] Therefore, the adjusted offense level for Counts 6, 8, 14, and 15 is level 22.

Regarding three of the § 922(g) counts, the United States argues that the four-level enhancement under § 2K2.1(b)(6)(B) applies to Counts 8, 14, and 15. Docs. 200, 214. Section 2K2.1 applies to convictions under § 922(g), and the four-level enhancement applies if the defendant, in relevant part, "used or possessed any firearm . . . in connection with another felony offense[.]" § 2K2.1(b)(6)(B). Section 2K2.4 is the applicable section to violations of § 924(c), and provides that if the defendant "was convicted of violating section 924(c) . . . the guideline sentence is the minimum term of imprisonment required by statute." Application Note 4 to § 2K2.4 provides,

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).

§ 2K2.4 cmt. n.4. Thus, "a sentence enhancement for using a firearm during the commission of a crime does not apply if a defendant is also convicted under 18 U.S.C. § 924(c)(1) for using a

---

[4] As the Court discusses below, the prohibition in Application Note 4 to § 2K2.4 prevents the four-level enhancement under § 2K2.1(b)(6)(B) from applying in this case. The Tenth Circuit has ruled, however, that the same prohibition does not extend to an enhancement for the number of firearms possessed in the underlying conduct, as this is distinct and separate offense conduct that is not embodied by a § 924(c) conviction. *See United States v. Terrell*, 608 F.3d 679 (10th Cir. 2010) ("[A] sentence for using, possessing, brandishing, or discharging a firearm in violation of § 924(c) does not punish the additional and separate wrong of utilizing multiple weapons as part of the underlying drug-trafficking or violent-crime offense or offenses.").

firearm in committing the underlying offense." *United States v. Edmond*, 535 F. App'x 737, 738 (10th Cir. 2013) (citing U.S.S.G. § 2K1.4 cmt. n.4) (explaining the role of Amendment 599 in the Sentencing Guidelines). For this reason, Count 6 for violation of § 922(g) in relation to the Lacey carjacking is ineligible for the four-level enhancement because it is clearly tied to the conduct underlying the § 924(c) conviction in Count 4, which was also related to the Lacey carjacking. The Government has argued, however, that the enhancement under § 2K2.1(b)(6)(B) can apply to Counts 8, 14, and 15, on the grounds that the felony conduct underlying those § 922(g) charges is unrelated to the Lacey carjacking underlying Count 4.

Specifically, the Government points out that Defendant sustained a conviction under § 922(g) for the drive-by shooting on April 10, which is the conduct underlying Count 8. Shooting at a dwelling from a motor vehicle is a fourth degree felony under NMSA § 30-3-8. Regarding Count 14, Defendant sustained a conviction under § 922(g) for the Luna car theft incident on April 18. The Court found Defendant not guilty on the charges of conspiracy to commit carjacking, carjacking, and § 924(c), but the Defendant was convicted under § 922(g) for conduct on that date. He therefore has no conviction other than the § 922(g) charge for the underlying conduct from the Luna car theft. The felony crime was felony theft of the vehicle under NMSA § 30-16D-1 ("Unlawful taking of a vehicle or motor vehicle consists of a person taking any vehicle or motor vehicle . . . intentionally and without consent of the owner."). Finally, the Government argues that the enhancement may apply to Count 15, which is a § 922(g) conviction related to conduct on the date of Defendant's arrest. The related felony is the possession of methamphetamine, which underlies the conviction in Count 16 and is a felony under NMSA § 30-31-23 E. The Government asserts that the enhancement under § 2K2.1(b)(6)(B) can apply to Counts 8, 14, and 15 (three § 922(g) convictions) because they are

unrelated to the conduct underlying the § 924(c) conviction from the Lacey carjacking and do not conflict with the purpose of Application Note 4.

The Court disagrees, however, that the § 2K2.1(b)(6)(B) enhancement can apply to Counts 8, 14, and 15 because the § 922(g) counts are subject to a single grouping pursuant to § 3D1.2(d), Grouping of Closely Related Counts. Section 3D1.2(d) provides a chart demonstrating that "[o]ffenses covered by the following guidelines are to be grouped under this subsection: . . . § 2K2.1." Section 2K2.1 expressly applies to § 922(g) charges, and thus Counts 6, 8, 14, and 15 must be grouped together pursuant to the chart in § 3D1.2(d). The Government's argument, therefore, fails because the single grouping of the § 922(g) counts means the § 924(c) sentence "is imposed in conjunction with a sentence for the underlying offense," in which case the Application Note 4 prohibits application of § 2K2.1(b)(6)(B). Although the Government argues that the enhancement should apply to other conduct unrelated to the Lacey carjacking underlying the § 924(c) charge, Application Note 4 states that a sentence imposed under § 2K2.4 (i.e. § 924(c)) "accounts for any . . . weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." The singular grouping of the § 922(g) counts expands the relevant conduct, and the prohibition of applying the § 2K2.1(b)(6)(B) enhancement in conjunction with the § 924(c) conviction in Count 4 now extends to the conduct underlying the entire group. The four-level enhancement does not apply, and the adjusted offense level for Counts 6, 8, 14, and 15 is level 22.

Finally, Counts 1 and 2 related to the Lacey carjacking are pulled into the singular group of the § 922(g) convictions pursuant to § 3D1.2(c), which requires grouping "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment

15

to, the guideline applicable to another of the counts." § 3D1.2(c). The Tenth Circuit most recently addressed this aspect of grouping in the unpublished opinion in *United States v. Rafal*, No. 17-cr-4107, 2018 U.S. App. LEXIS 25410 (10th Cir. Sept. 7, 2018). In *Rafal*, the Circuit ruled that the district court erred by not grouping the two counts of conviction under § 3D1.2(c). *Id.* at *6. The counts of conviction in *Rafal* were one count of bank robbery in violation of 18 U.S.C. § 2113(a), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *Id.* at 1. The district court failed to group the counts together, even though the counts involved "substantially the same harm." *Id.* at 6 (citing § 3D1.2(c)). The Circuit further noted that the commentary addresses such a similar situation, stating that "use of a firearm in a bank robbery and unlawful possession of that firearm are sufficiently related to warrant grouping of counts under this subsection." *Id.* (citing § 3D1.2 cmt. n.5). The district court's failure to group the charges resulted in a higher offense level calculation after "combining" the offense levels, which the Circuit ruled was error because the "felon-in-possession-of-a-firearm count embodies conduct that was treated as a specific offense characteristic of the bank robbery count." *Id.* The Court notes that the circumstances in *Rafal* are sufficiently similar to provide guidance about grouping in the present case, as the § 922(g) conviction in Count 6 arose from the same circumstances as Counts 1 and 2 involving the Lacey carjacking. Thus, Counts 1 and 2 become part of the singular group because those convictions embody conduct included as a special offense characteristic in § 2K2.1.[5]

In determining what the offense level should be for the singular group, the Court turns to § 3D1.3, which provides the process for determining the offense level of a group when the counts are controlled by different guideline sections. Regarding Counts 1 and 2, which were

---

[5] Count 16 (possession of methamphetamine) is technically in a separate group, but it does not increase Defendant's offense level pursuant to § 3D1.4. Doc. 190.

grouped as closely related counts and specific offense characteristic pursuant to § 3D1.2(c), the offense level is 22. Regarding the remaining Counts 6, 8, 14, and 15, grouped pursuant to § 3D1.2(d), the offense level is also 22. Thus, the adjusted offense level of the single group containing Counts 1, 2, 6, 8, 14, and 15 is level 22.

## CONCLUSION

As the parties do not dispute that the criminal history category is IV, and the Court finds that the adjusted offense level is 22, the properly calculated Sentencing Guidelines range is 63–78 months. When the mandatory 60-month sentence is included for the § 924(c) conviction in Count 4, the total adjusted advisory 2016 United States Sentencing Guidelines range in the matter of Defendant's resentencing is 123–138 months' imprisonment. Accordingly, for the reasons set forth in this Memorandum Opinion and Order, the Court **OVERRULES** the United States' Objections (**Doc. 214**) to the Sentencing Guidelines calculations contained in the Addendum to Presentence Report (Doc. 212). The Court reserves judgment on the United States' request for an upward variance until the Court pronounces the sentence in this matter.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE